[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action seeking the dissolution of an eleven-year marriage on the ground of irretrievable breakdown. In her complaint, which was filed on June 7, 2001, the plaintiff wife seeks a dissolution, a fair division of the marital property and debts, and alimony. The defendant husband filed an answer and cross-complaint on June 13, 2001, in which he admitted all of the material allegations of the complaint. He seeks a divorce and an equitable distribution of the real and personal property of the parties.
A trial was held on October 8 and 9, and December 20, 2002. Both parties were represented by counsel. Testimony was given by the plaintiff, the defendant, Cheryl Harrison, a witness for the defendant, and James Gobes, a pension expert. In addition, numerous exhibits were stipulated to and introduced into evidence. After considering and weighing the testimony and assessing the credibility of the witnesses, and having carefully reviewed the documentary evidence, the court finds the following facts to have been proven.
The parties were married on September 28, 1991, in Milford, Connecticut. Both parties have continuously resided in the State of Connecticut for at least twelve-months immediately proceeding the date of filing this action. There are no minor children born of this marriage. Neither party has been the recipient of financial support from the State of Connecticut. The court finds that it has jurisdiction over the parties and the marriage and that all statutory stays have expired.
This is the third marriage and divorce for each party. The plaintiff wife is 49 years old and the defendant husband is 61 years of age. Both parties are high school graduates and both appear to be in relatively good health.
The plaintiff resides in an apartment in East Hartford, Connecticut. She is employed as a waitress/manager by Perry Tony's, Inc., DBA CT Page 16621 The Bridgeport Flyer Diner, in Milford, Connecticut. She has been so employed for about twenty-five years, and is currently earning a gross salary of about $163 plus approximately $400 in tips per week. Her net weekly income is $445.
The defendant resides in the marital residence located at 171 Windsorville Road, Ellington, Connecticut. He has been employed as a long distance truck driver for more than thirty years. For the last eight years his employer has been the Ionics Company of Watertown, Massachusetts. He is currently earning a gross weekly wage of about $830 and a net weekly income of $552.
The parties met in 1984 and established a relationship soon thereafter. The defendant was married to his second wife at the time. In 1986 the defendant and his former wife refinanced the mortgage on their house for $50,000. Approximately $20,450 was used to pay off an existing mortgage loan. The balance, after closing costs, was used to purchase a condominium for the second wife. About this time defendant's second wife left the marital home and the plaintiff moved in with the defendant. The defendant and his second wife were divorced in May 1990. The parties were married in September 1991.
The 1990 judgement of dissolution incorporated a property settlement agreement of the parties in which the plaintiff husband was awarded the marital residence and was held solely responsible for the existing $43,000 mortgage on said property. [Exhibits K and L] In return, he was ordered to execute a promissory note and mortgage deed on the marital residence in favor of his then wife in the amount of $38,000, with interest at the rate of 8% per annum. The note, and accrued interest, was due and payable in full on March 1, 2001, or upon the sale or refinancing of the home. Additionally, he was ordered to contribute the sum of $2,000 per year to his wife's IRA until she attained the age of 60 years. Finally, the plaintiff husband was awarded sole interest in his Teamsters Union pension fund, the total value of which was listed on his May 18, 1990-financial affidavit at $22,494.42 on that date. [Exhibit K] The parties have stipulated that, based upon the current opinions of their experts, the approximate true value of the defendant's pension in 1991 was approximately $33,000.
During the years from 1985 until 2002, the plaintiff deposited between $300 and $500 of her wages each week into joint checking/savings accounts of the parties. The defendant also deposited his pay check into the joint accounts. These funds were used by both parties to pay their routine living expenses, various loans, and some of the obligations stemming from the defendant's prior marriage. Since the date of their marriage, the CT Page 16622 parties have jointly paid off the $43,000 mortgage on the marital residence, and have contributed a total of $20,000 to the defendant's former wife for her IRA account pursuant to the judgement of dissolution. They also paid for numerous repairs and additions to the marital residence including: the installation of a new roof ($6,870); remodeling of the bathroom ($7,300); installation of a new deck ($1,600); extension of the patio and installation of a screened porch ($8,700). [Exhibits A through E]. The fact that these repairs and enhancements may have been done at the request of the wife does not mean that the husband did not enjoy or benefit from them.
The court finds that both parties have contributed to preservation, enhancement, and value of the marital residence, both prior to and during the course of the marriage. It was through the efforts of both parties that the pre-existing mortgage loan on the marital home was paid, even though the deed to the property was and continues to remain only in the name of the defendant. However, the court finds that it is solely due to the defendant's failure to pay the $38,000 note which he owes to his former wife that this debt has now doubled to approximately $76,000.
It has been approximately twelve and one-half years since the defendant was divorced from his second wife, and approximately nineteen months since the promissory note has come due, yet he has not made any effort to pay the court ordered property settlement of $38,000 during that time. As a consequence, simple interest has accrued on the note at the rate of 8% per year which means that he now owes his former wife approximately $76,000. The defendant stated that since his former wife never asked him to pay her either the $38,000, or the interest on the note, he decided to ignore it. He acknowledged in his testimony and in his financial affidavit that the marital home is now encumbered by at least $76,0000 in principal and interest which he owes to his ex-wife. The plaintiff asserted that the defendant told her that his former wife does not want the interest on the $38,000 promissory note; however, there is no credible evidence to support this assertion.
The defendant testified that he doesn't intend to do anything about paying the increasing debt owed to his former wife until he has to because the only way that he will be able to satisfy this debt is to sell his house.
The marital assets of the parties include the marital home, which the parties agree has a fair market value of $154,000 but which is encumbered by $76,000 in principal and interest owed by the defendant to his former wife. Additionally, there is an outstanding home equity loan in the defendant's name with a balance of approximately $4,000. CT Page 16623
Each party has several modest savings accounts worth approximately $5,000 each, and a Christmas Club savings account worth $4,000 which is in the defendant's name. Further, the plaintiff has a Prudential life insurance policy which has a net cash value of approximately $21,000, and the defendant has an Aetna life insurance policy which has a cash value of approximately $14,250. The plaintiff owns a 2000 Ford Mustang automobile valued at about $11,000 but subject to a loan of $11,000, and the defendant owns a 1990 Ford pick-up truck valued at $2000.
The parties also jointly own a time share apartment, but disagree as to its value and the current amount owed on a mortgage encumbering the property. The plaintiff values it at $12,000 with a mortgage loan of $10,000 and the defendant values it at $7,000 with a mortgage loan of about $5800. No documentary evidence or expert appraisal testimony was produced in support of either position. The court accepts the defendant's valuation as the more reasonable of the two.
The only other asset of significance is the defendant's vested interest in his Teamsters Pension Fund, the current retirement value of which is $1,666.00 per month. [Exhibit 1] The parties have stipulated that the total current value of the pension is $200,000. This is an employer-contributed defined pension plan. The defendant has never had to contribute any funds to the pension plan. His pension benefits are based upon his twenty-five years and eleven months of employment as a teamster union truck driver during the years of 1966 through 1991. The defendant did not earn any pension credits from the Teamsters Pension Fund after 1991. [Exhibits 1 and N] While the vested pension benefit is a marital asset, the evidence is clear that it was acquired by the defendant almost entirely before his marriage to the plaintiff in September 1991. There is no credible evidence that the plaintiff had any part in the acquisition, enhancement, or preservation of this asset.
The court notes that the plaintiff testified that during each of the eleven years that she worked during the marriage she earned between $400 and $650 per week in tips as a waitress. Indeed, her financial affidavits of May 2002 and October 2002 reflect tips of $400 per week. However, this income is neither shown on her W-2 forms, nor does if appear in the parties 1993 and 2001 joint state and federal tax returns. [Exhibits 4, 10, 11] It is interesting that the plaintiff's reported occupation on the 1993 and 2001 joint federal income tax returns are "clerical" rather than "waitress".
The plaintiff testified that she was aware that she was required to report her tips as income for state and federal income tax purposes. She CT Page 16624 admitted that she has not done so. The court finds by a fair preponderance of the evidence that both parties knew that the wife's tips were required to be reported as income in their tax returns, and both were aware that the tips were not being reported. The defendant testified that their accountant listed his wife's occupation as "clerical" because she is a waitress/manager and therefore can be considered a clerical employee. The court does not find this explanation, nor to a great extent the testimony of either party' to be entirely credible.
The failure of this marriage is the fault of both parties. This was not a particularly healthy relationship for much of the eleven years that the parties were married. There was no sexual intimacy between the parties for many years prior to the filing of the complaint for dissolution. There was testimony of infidelity on the part of the wife and testimony of alcohol abuse by the defendant. The court finds that the defendant's alcohol abuse, which resulted in insulting and demeaning public and private behavior directed toward his wife, was a major contributing factor in the demise of the marriage. The court did not find the defendant's testimony that he loves his wife and does not want this divorce to be credible. The court also notes that the defendant filed a cross complaint in this case in which he seeks a dissolution of the marriage.
After reviewing the evidence, assessing the credibility of the witnesses, and considering all relevant statutory criteria, especially the factors set forth in § 46b-62, § 46b-81, and § 46b-82, and applying the same to the evidence, the court enters the following orders.
(1) A decree is entered dissolving this marriage on the ground of an irretrievable breakdown, all the allegations of the complaint having been proven true. With the entry of said decree, the cross complaint is dismissed as moot.
(2) The parties have advised the court that they have divided their personal property to their mutual satisfaction. The court will not disturb their agreement and orders that the parties retain the personal property currently in their possession.
(3) The plaintiff shall retain sole possession of the Ford Mustang free from any claims of the defendant. She shall be solely responsible for the loan on said vehicle and shall hold the defendant harmless thereon. The defendant shall retain sole possession of the Ford truck free from any claims of the plaintiff and hold the plaintiff harmless thereon.
(4) Each party shall retain their respective life insurance policies CT Page 16625 and bank checking and savings accounts, free from any claim of the other, with the exception of the Christmas club account from which the defendant is ordered to pay the plaintiff $2,000 within thirty days of this judgement.
(5) Alimony is not awarded to either party. Neither party is in a better financial position than the other. Each party is employed and has been employed on a full time basis throughout most of the marriage. Both are in reasonably good health and each is capable of supporting himself/herself without financial assistance from the other.
(6) Each party shall be solely responsible for the cost of their health insurance and health care expenses. The defendant shall cooperate with the plaintiff in the event that she elects to continue her health insurance coverage through the defendant's employer under COBRA.
(7) The timeshare owned by the parties shall be placed on the market within 30-days of this judgement and sold for its reasonable market value as soon as possible. Until it is sold, the parties shall be equally responsible for all costs relating to said property. The parties shall equally share in the net profit or loss resulting from said sale.
(8) Subject to additional orders of the court relating to a lump sum property settlement payable to the plaintiff, the defendant is awarded sole interest in the marital home located at 171 Windsorville Road, Ellington, Connecticut. He shall be solely responsible for all mortgages, loans, debts. taxes, and liabilities relating to said property. and shall hold the plaintiff harmless thereon.
(9) The defendant is ordered to pay to the plaintiff a lump sum property settlement in the amount of $40,000 within 120 days of the date of judgement. Said debt shall be evidenced by a promissory note bearing simple interest of 4.0% per annum and secured by a mortgage on the marital home. The interest shall begin to accrue as of the date of this judgement and is thereafter to be paid to the plaintiff on the first of each month, beginning on February 1, 2003, until the debt has been satisfied. Failure to make said interest payments as ordered shall be grounds for contempt.
If the $40,000 note is not paid in full within 120 days of the date of this judgement, then the marital property located at 171 Windsorville Road, Ellington, Connecticut shall immediately be placed on the market for sale at its fair market value through a licensed real estate broker. All costs relating to the sale of the property shall be the sole responsibility of the defendant. CT Page 16626
The court will retain jurisdiction over the marital residence until the $40,000 property settlement, and interest on said debt, have been fully paid to the plaintiff.
(10) The defendant is awarded his Teamster's pension free from any claim of the plaintiff. After weighing the evidence, assessing the credibility of the witnesses, and taking into consideration the lump sum property settlement being awarded to the plaintiff, it is the judgement of this court that equity is best served by not awarding a share of the defendant's pension benefit to the plaintiff in this case.
(11) Each party shall be solely responsible for their own debts, including attorney fees.
(12) Counsel for the plaintiff shall prepare and submit to the court a judgement file within 60 days of the date of judgement. Both counsel shall endorse the judgement file pursuant to the provisions of Practice Book Section 6-4.
Terence A. Sullivan, J. Superior Court Judge CT Page 16627